FILED

JUL 29 2022

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature]
DEPUTY CLERK

AO 241 (Rev. 09/17)

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: Eastern District of California |
|---|---|
| Name (under which you were convicted): Hack Townsend Culling | Docket or Case No.: 2:22-CV 1349 - EFB HC |
| Place of Confinement : Sacramento County Jail and on PRCS under Solano County Probation | Prisoner No.: X-531084 |
| Petitioner (include the name under which you were convicted) Hack Townsend Culling v. | Respondent (authorized person having custody of petitioner) Christopher Hansen, Chief Probation Officer, Solano County Probation |
| The Attorney General of the State of: California | |

**PETITION**

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
   Solano County Superior Court, The Honorable Scott L. Kays
   600 Union Ave
   Fairfield CA

   (b) Criminal docket or case number (if you know): FCR 31637

2. (a) Date of the judgment of conviction (if you know): 09/09/2016

   (b) Date of sentencing: 01/02/2018

3. Length of sentence: 1 year and 4 months prison.

4. In this case, were you convicted on more than one count or of more than one crime? ☑ Yes ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:
   Criminal conviction for false imprisonment by violence or menace in violation of Cal. Penal Code, §236.
   Also convicted at trial of misdemeanor battery in in violation of Cal. Penal Code §242.

6. (a) What was your plea? (Check one)

   ☑ (1) Not guilty ☐ (3) Nolo contendere (no contest)

   ☐ (2) Guilty ☐ (4) Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? not applicable

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury ☐ Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes ☑ No

8. Did you appeal from the judgment of conviction?

☐ Yes ☑ No

9. If you did appeal, answer the following:

(a) Name of court:

(b) Docket or case number (if you know):

(c) Result:

(d) Date of result (if you know):

(e) Citation to the case (if you know):

(f) Grounds raised:

(g) Did you seek further review by a higher state court? ☐ Yes ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know): ______

(5) Citation to the case (if you know): ______

(6) Grounds raised: ______

(h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☑ No

If yes, answer the following:

(1) Docket or case number (if you know): ______

(2) Result: ______

(3) Date of result (if you know): ______

(4) Citation to the case (if you know): ______

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court? ☑ Yes ☐ No

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: Solano County Superior Court

(2) Docket or case number (if you know): FCR31637 and FCR360329 (denial used related case #

(3) Date of filing (if you know): 09/22/2021

(4) Nature of the proceeding: habeas corpus

(5) Grounds raised: (1) ineffective assistance of trial counsel for failure to investigate and failure to subpoena exculpatory witnesses, failure to prepare and failure to prepare defendant to to testify,

(2) ineffective assistance of sentencing counsel for failure to file an appeal of the jury trial conviction despite my instructions.

(3) ineffective assistance of counsle for failure to advise the judge of a substantial competency concern due to my taking medications for injuries from an accident which interfered with my ability to understand the trial and to testify.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☑ No

(7) Result: Petition denied - Attached as Petitioner's Exhibit A

(8) Date of result (if you know): 01/21/2022

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: California Supreme Court

(2) Docket or case number (if you know): S273914

(3) Date of filing (if you know): 04/15/2021

(4) Nature of the proceeding: Habeas corpus

(5) Grounds raised: (1) Ineffective assistance of trial counsel for failure to investigate and failure to subpoena exculpatory witnesses, failure to prepare and failure to prepare defendant to to testify,

(2) ineffective assistance of sentencing counsel for failure to file an appeal of the jury trial conviction despite my instructions.

The Supreme Court habeas petition is atttached at Petitioner's Ex. B

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes ☑ No

(7) Result: Petition was denied see Petitioner's Ex. C

(8) Date of result (if you know): 07/28/2022

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: NA

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❒ Yes ❒ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ❒ Yes ❒ No

(2) Second petition: ❒ Yes ❒ No

(3) Third petition: ❒ Yes ❒ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

My second petition was filed in the highest court.

12. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

**GROUND ONE:** Ineffective Assistance of Trial Counsel for Failing to Subpoena and Call Exculpatory Witnesses, and For Failure to Investigate and Prepare Defendant to Testify

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

My trial lawyer, Tamanl Taylor, committed ineffective assistance ot counsel in violation of the Sixth Amendment by falllng to investigate and subpoena an exculpatory defense witness, NIcole Beck, who was present at the the scene of the alleged crime and would have rebutted the alleged victim's testimony. Attorney Taylor violated my Sixth Amendment right to subpoena witnesses when she failed to subpoena this witness for trial. Attorney Taylor was also ineffective for failure to prepare me to testify because the combination of my testimony corroborated by the testimony of witness Beck would likely have changed the result. Attached habeas corpus petition Ex. B

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☑ No

(2) If you did not raise this issue in your direct appeal, explain why: My lawyer failed to file a direct appeal after trial despite my request to do so and no possible strategic benefit to not appealing a conviction by jury. The sentencing lawyer was not present at trial and no transcripts not available available. See Ex. B.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Heabeas corpus

Name and location of the court where the motion or petition was filed: Solano County Suprior Court Fairfield CA

Docket or case number (if you know): FCR360329 and FCR31637

Date of the court's decision: 01/21/2022

Result (attach a copy of the court's opinion or order, if available): Attached as Petitioner's Ex. A (same decision as ground one)

Note that the Solano County Court used the case number of consolidated case on the denial FCR360329

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available): Denied see Exhibit A: Attached

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One:

**GROUND TWO:** Ineffective Assistance of Sentencing Counsel for Failing to File an Appeal after a Jury Trial Conviction, Failing to Meet to Discuss the Appeal and Failing to Obtain and Read the Trial Transcript

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

The trial transcript shows that I was convicted of one count and found not guilty of a second count. If counsel had obtained the transcript during the one year between trial and sentencing, as any competent attorney would have done, he would have known there were sevveral issues that were potentially reversible errors. At the close of the prosecution's case, the defense attorney asked for a continuance in order to subpoena a witness, Nicole Beck, whom she had interviewed only eight days prior to trial. An appellate court could have held that the judge's denial of the motion to continue constituted a violation of the defendant's Sixth Amendment right to call witnesses. A second issue was the court's error in allowing prosecution to introduce two prior domestic violence incidents with details in the case in chief. See further explantion and legal authority in state habeas petition Ex. B.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ❒ Yes ❒ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ❒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Habeas corpus

Name and location of the court where the motion or petition was filed:

Solano County Superior Court

Fairfield CA

Docket or case number (if you know): FCR 31637 and FCR360329 related case number

AO 241 (Rev. 09/17)

Date of the court's decision: 01/21/2022

Result (attach a copy of the court's opinion or order, if available): Petition Denied

(same decision as denial of Ground I) See attached Exhibit A.

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two : I filed a state habeas petition in the California Supreme Court which was denied on 7/28/2022

**GROUND THREE:** Ineffective Assistance of Trial Counsel for Failing to Continue Trial Where My Meidcations Interfered With Understanding and Competence in Violation of Fifth and Sixth Amendment

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Shortly before trial I was badly injured in a vehicle accident and was prescribed pain medications. The medication reduced my ability to understand the trial and effected my ability to make coherent decisions about testifying. This level of medication made it impossible for me to be prepared to testify and the failure to obtain a continuance violated my right to testify in my own defense. Prior to trial, I brought hospital records to my attorney which proved my injuries and medications. She failed to notify the judge that the medications caused a substantial question of competency to stand trial until medications could be reduced. Failure to raise the issue was ineffective. See Ex. B

(b) If you did not exhaust your state remedies on Ground Three, explain why:

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: habeas petition

Name and location of the court where the motion or petition was filed: Solano County Superior Court Fairfield CA

Docket or case number (if you know):

Date of the court's decision: 01/21/2022

Result (attach a copy of the court's opinion or order, if available): Petition Denied part of same decision attached herein as Exhibit A.

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☑ No

(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: I filed a state habeas corpus peition in the California Supreme Court which was denied on 7/28/2022. Decision attached as Exhibit B.

**GROUND FOUR:**

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue? ❒ Yes ❒ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❒ Yes ❒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: ______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available): ______

(3) Did you receive a hearing on your motion or petition? ❒ Yes ❒ No

(4) Did you appeal from the denial of your motion or petition? ❒ Yes ❒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? ❒ Yes ❒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ______

Docket or case number (if you know): ______

Date of the court's decision: ______

Result (attach a copy of the court's opinion or order, if available): ______

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: ______

AO 241 (Rev. 09/17)

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction? ☑ Yes ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(b) Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

No

14. Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition? ☐ Yes ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

15. Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging? ☐ Yes ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

Tamani Taylor, Solano County Public Defenders, 675 Texas St. Ste. 3500, Fairfield CA 94533

(b) At arraignment and plea:

Tamani Taylor, Solano County Public Defenders, 675 Texas St. Ste. 3500, Fairfield CA 94533

(c) At trial:

Tamani Taylor, Solano County Public Defenders, 675 Texas St. Ste. 3500, Fairfield CA 94533

(d) At sentencing:

Vincent R. Maher, 725 Texas Street., Fairfield CA 94533

(e) On appeal:

none

(f) In any post-conviction proceeding: Douglas Beevers, AFPD, Federal Public Defenders Eastern District of California, 800 I St., 3rd Floor, Sacramento CA, 95814. (Both state habeas petitions)

(g) On appeal from any ruling against you in a post-conviction proceeding:

none

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? ☑ Yes ☐ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

U.S.District Court for the Eastern District of California, pending sentencing before Judge William Shubb 2:20-cr-0029-WBS

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence: pending decision

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future? ☐ Yes ☑ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

My state attorney failed to file my state appeal, and refused to turn over the file despite requests. The state public defender lost my file for over one year. In addition, the Court reporter retired and did not respond to requests for the transcripts.

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1) A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: to vacate my conviction

or any other relief to which petitioner may be entitled.

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on ____________ (month, date, year).

Executed (signed) on July 29, 2022 (date).

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

ENDORSED FILED
Clerk of the Superior Court

JAN 21 2022
By W. SPRAGUE
DEPUTY CLERK

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SOLANO**

**DEPARTMENT FIFTEEN**

* * * * *

| | |
|---|---|
| In Re the Application of:<br>HACK CULLING,<br>Petitioner,<br><br>For Writ of Habeas Corpus | CASE NO.: FCR360329<br><br>**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

On October 25, 2021, Petitioner Hack Townsend, through counsel, filed the instant petition for writ of habeas corpus wherein he complains that both the attorneys who represented him in his criminal case provided ineffective assistance of counsel based on multiple different grounds.

Petitioner states that he was found guilty of one count of false imprisonment by violence or menace, a violation of Penal Code § 236, and misdemeanor battery, a violation of Penal Code § 242, following a jury trial in Solano County. Petitioner states he was convicted on September 16, 2016, and sentenced on January 2, 2018 to a state prison sentence of 1 year and 4 months. Petitioner states that he is no longer incarcerated, but that he was released on Post Release Community Supervision on February 8, 2019.



[redacted]

Petitioner's first assertion is that his trial attorney, Ms. Taylor, was ineffective based on the failure to investigate and subpoena an exculpatory witness, Ms. Beck. Petitioner states that the witness would have presented testimony, which would have rebutted the prosecution's case. Specifically, Petitioner asserts that Ms. Beck would have testified that she was at the residence at the time of the incident and that she did not hear any yelling, screaming, or anything indicating that someone was in distress. Petitioner states that Ms. Taylor interviewed Ms. Beck and received her statement before trial, but did not subpoena her. Petitioner argues that it was ineffective because Ms. Taylor failed to investigate Ms. Beck's testimony.

Petitioner's second assertion is that Ms. Taylor was ineffective for failing to prepare Petitioner to testify. Petitioner states that Ms. Taylor advised him not to testify because the prosecution could impeach him with his prior convictions. Petitioner states that his prior convictions were allowed via a motion in limine filed by the prosecution. Petitioner argues that it was ineffective of Ms. Taylor not prepare him to testify after his prior convictions were allowed into the trial. Petitioner states that his testimony might have changed the verdict since he would have been found not guilty of one of the counts. However, Petitioner fails to explain any further how his testimony would have led to a more favorable outcome and does not state that he requested to testify after the motion in limine was granted.

Petitioner's third assertion is that his counsel, Mr. Maher was ineffective for failing to file an appeal after Petitioner's conviction. Petitioner states that he told Ms. Taylor that he wanted to appeal his conviction, but that Ms. Taylor did not convey that information to Mr. Maher. Petitioner additionally states that Mr. Maher was ineffective for failing to meet with him to discuss appealing his conviction. Furthermore, Petitioner states that Mr. Maher was ineffective by failing to order the trial transcript for over a year to review the transcript for appellate issues. Petitioner states that there were "several issues that were potentially reversible errors," including the fact that the trial judge denied defense counsel's request for a continuance to subpoena Ms. Beck. Petitioner argues that an appellate court "could have" found that the denial of the continuance was reversible error. Petitioner also points to the fact that he was found guilty of

one of the included counts and that the trial judge permitted the prosecution to use two prior incidents of domestic violence into the case could have been an issue.

Petitioner's fourth assertion is that Ms. Taylor was ineffective for failing to continue the trial when Petitioner was taking medication that made it difficult for him to understand the trial. Petitioner argues that due to the medication, he was not competent to stand trial and that Ms. Taylor was ineffective by failing to raise a substantial question about Petitioner's competency.

Petitioner attached the transcript from his preliminary hearing held on January 25, 2016. The attached pages contain testimony from the victim stating that Petitioner was aggressive with the witness and that the witness did not think Petitioner's roommate was home. The victim further testified that she was at Petitioner's house from two to three in the afternoon.

Petitioner also attaches the transcript from his trial from September 8, 2016. The attached pages appear to include the testimony of the victim given at trial. The text message conversation entered into evidence at trial showed the Petitioner told the victim that only "the girlfriend" was at the house with him. The transcript also includes defense counsel's request to continue in order to subpoena Ms. Beck. The Court inquired when defense counsel began attempting to subpoena Ms. Beck and ultimately held that the trial would not be continued. After the prosecution rested, the Court further inquired if Petitioner would be testifying. After a brief recess to discuss whether Petitioner would testify, the defense rested.

Finally, Petitioner attaches the transcript of the interview with Ms. Beck completed by the Solano County Public Defender's Office on August 13, 2016. Ms. Beck stated that she lived with her boyfriend on a different floor of the house from Petitioner and that there was another woman who lived in another room on the same floor who was not home at the time. Ms. Beck stated that on the day of the incident she was going up and down the stairs that morning since she was leaving that night and that she did not hear anything. Ms. Beck also stated that she would have believed that she would have heard something going on in Petitioner's room. Additionally, Ms. Beck stated that she left the house around eleven that night, but that she had also left the house during the afternoon to get food.

Petitioner has not stated a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474-75.) Petitioner has failed to demonstrate that he was prejudiced by any of the actions of either counsel who represented him sufficient to establish ineffective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Frye* (1998) 18 Cal.4th 894, 979.)

Accordingly, the petition for writ of habeas corpus is DENIED.

Dated: JAN 20 2022

Robert S. Bowers

**ROBERT S. BOWERS**
**Judge of the Superior Court**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SOLANO**
**Case No. FCR360329**

# CERTIFICATE OF MAILING

I, the undersigned, certify under penalty of perjury that I am a deputy clerk of the above-entitled Court and not a party to the within action; that I am familiar with the County of Solano's procedure for collection and processing of correspondence for mailing with the United States Postal Service. This document will be deposited with the United States Postal Service on the same day as the execution of this document in the ordinary course of business. This document was sealed and placed for collection and mailing on the same day as the execution of this document at the address given for deposit in the United States Postal Service and following ordinary business practices. Said envelope was addressed to the attorneys for the parties, or the parties, as shown below:

Document mailed:

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

DOUGLAS J. BEEVERS
FEDERAL DEFENDERS
EASTERN DISTRICT OF CALIFORNIA
801 I ST., 3RD FLOOR
SACRAMENTO, CA 95814
RE: HACK TOWNSEND CULLING

Dated: January 21, 2022

By: W. SPRAGUE
W. SPRAGUE
Deputy Clerk

HC-001

Name: Douglas J. Beevers

Address: Cal. Bar #288639

Office of the Federal Public Defenders for the

Eastern District of California

801 I Street, 3rd Floor

Sacramento, CA 95814

CDC or ID Number: X-5310864

RECEIVED
SOLANO SUPERIOR COURT
2021 SEP 22 P 1: 03

SOLANO COUNTY SUPERIOR COURT

(Court)

HACK TOWNSEND CULLING
Petitioner

vs.

CHRISTOPHER HANSEN, CHIEF PROBATION OFFICER
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. S273914

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**
- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.
- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.
- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."
- If you are filing this petition in the superior court, you only need to file the original unless local rules require additional copies. Many courts require more copies.
- If you are filing this petition in the Court of Appeal, file the original of the petition and one set of any supporting documents.
- If you are filing this petition in the California Supreme Court, file the original and 10 copies of the petition and, if separately bound, an original and 2 copies of any supporting documents.
- Notify the Clerk of the Court in writing if you change your address after filing your petition.

[redacted]

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court (as amended effective January 1, 2018). Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

**This petition concerns:**

[X] A conviction
[ ] Parole
[X] A sentence
[ ] Credits
[ ] Jail or prison conditions
[ ] Prison discipline
[ ] Other *(specify):* ______

1. Your name: Hack Townsend Culling

2. Where are you incarcerated? Sacramento County Jail, 651 I Street, Sacramento CA 95814

3. Why are you in custody? [X] Criminal conviction [ ] Civil commitment

*Answer items a through i to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
criminal conviction for false imprisonment by violence or menace in violation of Cal. Penal Code. §236. I was also convicted at trial of misdemeanor battery in in violation of Cal. Penal Code §242.

b. Penal or other code sections: Cal. Penal Code §236, §242.

c. Name and location of sentencing or committing court:
Solano County Superior Court, The Honorable Scott L. Kays
600 Union Ave
Fairfield CA

d. Case number: FCR316371

e. Date convicted or committed: September 9, 2016 (jury trial before the Hon. Wendy Getty)

f. Date sentenced: January 2, 2018 (The Hon. Scott L. Kays)

g. Length of sentence: 1 year and 4 months

h. When do you expect to be released? Released on PRCS February 16, 2018, but petition for revocation filed November 8, 2019

i. Were you represented by counsel in the trial court? [X] Yes [ ] No *If yes, state the attorney's name and address:*
Tamani Taylor, Solano County Public Defenders, 675 Texas St. Ste. 3500, Fairfield CA 94533 (at trial)
Vincent R. Maher, 725 Texas Street., Fairfield CA 94533 (at sentencing).

4. What was the LAST plea you entered? *(Check one):*

[X] Not guilty [ ] Guilty [ ] Nolo contendere [ ] Other: ______

5. If you pleaded not guilty, what kind of trial did you have?

[X] Jury [ ] Judge without a jury [ ] Submitted on transcript [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "The trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page 4. For additional grounds, make copies of page 4 and number the additional grounds in order.)*

My trial lawyer, Tamani Taylor, committed ineffective assistance of counsel in violation of the Sixth Amendment by failing to investigate and subpoena an exculpatory defense witness, Nicole Beck, who was present at the scene of the alleged crime and would have rebutted the alleged victim's testimony. Attorney Taylor violated my Sixth Amendment right to subpoena witnesses when she failed to subpoena this witness for trial. Attorney Taylor was also ineffective for failing to prepare me to testify because the combination of my testimony and Ms. Beck's testimony would likely have changed the result.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts on which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel, you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is, *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*.

My felony conviction for false imprisonment by violence was based on the testimony of one eye-witness, the alleged victim K.C., who testified that on July 30, 2015, I held her against her will in my house and threw her down hitting her head on the toilet. According to the trial transcript she testified that I was angry and elevated my voice. (Transcript p. 36). She testified that our daughter kept yelling, "Daddy, we are going to leave and we are never coming back." (Transcript p. 47) At trial, Attorney Taylor stated that she planned to call only one witness, Nicole Beck, my roommate's girlfriend, to testify that she was in the house at the time of the incident and "she never heard any yelling or screaming or anything like that that would suggest someone in duress." (Trial Transcript p. 112-113) Attorney Taylor admitted that she had not served Ms. Beck with a subpoena although she admitted that she "got her statement" eight days before the start of the trial. (Id.) Attorney Taylor's failure to subpoena Ms. Beck was ineffective, because I told Attorney Taylor that Ms. Beck was present more than a year before the trial, but she failed to investigate her testimony. Attorney Taylor received in discovery my text messages from that day where I told K.C. that "just the girlfriend" was home. " (Trial Transcript p. 72) Attorney Taylor's cross examination of K.C. in the January 25, 2016 preliminary hearing covered the possible presence of roommates. Ms. Beck is a public school teacher.

b. Supporting documents:

Attach declarations, relevant records, transcripts, or other documents supporting your claim. (See *People v. Duvall* (1995) 9 Cal. 4th 464, 474.)

Ex. A: Preliminary Hearing Transcript (excerpt), Ex. B: Trial Transcript (excerpt). Ex. C. Solano County Public Defender Investigator Ricardo Murillo Report of 8/31/2016 interview with Nicole Beck regarding Hack Culling case FCR 31371

c. Supporting cases, rules, or other authority *(optional)*:

(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)

In People v. Cromer, (2001) 24 Cal.4th 889, the Court held that an attorney allowing fourteen months to pass before contacting a witness was ineffective. In Turner v. Duncan, 158 F.3d 449 (9th Cir. 1998), the Ninth Circuit held that it was ineffective assistance for a lawyer not to investigate defenses. In Lord v. Wood, 184 F.3d 1083 (9th Cir. 1999), the Ninth Circuit held that failure to personally interview and call witnesses was ineffective assistance of counsel. The Supreme Court has held that counsel's performance was deficient where he failed to investigate available avenues most likely to yield corroboration without any tactical justification. In re Thomas, (2006) 37 Cal.4th 1249, 1352.

7. **Ground 2 or Ground** _______ *(if applicable):*
Attorney Taylor was ineffective in failing to prepare me to testify in my own defense, which violated my Sixth Amendment right to testify and to effective assistance of counsel. Prior to trial she advised me not to testify, because if and only if I testified the prosecution could impeach me with my prior convictions. This was ineffective, because on August 30, 2016, the prosecutor filed a motion in limine to admit my prior convictions in its case in chief and the underlying facts. Two days before trial, the judge granted the Prosecution's motion to admit the prior convictions, but Attorney Taylor never met with me to prepare my testimony in light of this changed circumstance. This failure was ineffective because my testimony might have changed the verdict, since the jury found me not guilty of count 2, although guilty of the lesser included offense.

a. Supporting facts:
The prosecution filed its motion in limine to introduce my prior conduct and convictions on August 30, 2016 and this motion was heard on September 7, 2016 and granted. Attorney Taylor did not meet with me to prepare my testimony now that my prior convictions were no longer a reason not to testify. A reasonably competent attorney would have known that such a motion would probably be filed and probably be granted in a domestic violence case. The trial transcript and docket show that this motion in limine was granted prior to trial, and Attorney Taylor had at least 24 hours to prepare me to testify after a decision and a full week to prepare me for the possibility that the motion would be granted.

b. Supporting documents:
The docket which shows the filing of the prosecution's motion in limine eight days before trial, and the absence of any defense response, and the date of the decision on the motion in limine a day before the trial started. Ex. D. Trial transcript of the verdict of not guilty on count 2, and guilty on the lesser included offense.

c. Supporting cases, rules, or other authority:
Interference with the right to testify has been held to be ineffective assistance of counsel. People v. Hayes, (1991) 229 Cal. App.3ed 1226. Many courts have held that a defendant need not personally object at trial to preserve a claim that counsel prevented such testimony. See United States v. Ortiz, 82 F.3d 1066, 1071 (D.C.Cir.1996); Underwood v. Clark, 939 F.2d 473, 476 (7th Cir.1991) (refusing to treat silence as waiver); United States v. Teague, 908 F.2d 752, 759–60 (11th Cir.1990); see also Tachibana v. State, (1995)79 Hawai'i 226, (holding unilateral action of attorney violated defendant's right to testify and was a separate claim.) In People v. Cunningham,(2001) 25 Cal.4th 926, 1031, the appellate court rejected a claim of insufficient preparation for capital sentencing testimony where the attorney had one day to meet and prepare defendant, but held that specific claims of ineffective preparation could only be addressed in a future habeas petition.

HC-001

7. **Ground 2 or Ground** 3 *(if applicable):*

My attorney Vincent Maher was ineffective in failing to file an appeal after my conviction at trial. After trial, I told my attorney Tamani Taylor that I wanted to appeal, and she was ineffective for failing to convey this instruction to Attorney Maher when she transferred the case to him upon discovery of a conflict. Attorney Maher was ineffective in failing to meet with me to discuss the appeal issue on either of my cases which he handled. Attorney Maher failed to order the trial transcript although he represented me for over a year on FCR 316371 and had no idea whether there were any grounds to appeal.

a. Supporting facts:

The trial transcript shows that I was convicted of one count and found not guilty of a second count. If he had obtained the transcript, as any competent attorney would have done, he would have known there were several issues that were potentially reversible errors. At the close of the prosecution's case, the defense attorney asked for a continuance in order to subpoena a witness, Nicole Beck, whom she had interviewed only eight days prior to trial. An appellate court could have held that the judge's denial of the motion to continue constituted a violation of the defendant's Sixth Amendment right to call witnesses and present a defense. This might have been reversible error, because the judge failed to inquire as to whether defense counsel made reasonable efforts to serve the witness. A second issue was whether the trial judge erred by permitting the prosecution to use two prior incidents of domestic violence in its case in chief complete with the violent details. Given the long delay, and the fact that the jury acquitted on one count, Attorney Maher should have obtained the trial transcript in order to advocate for me at sentencing.

b. Supporting documents:

The docket shows the length of time that Attorney Maher represented Mr. Culling on this case, and shows that the trial transcript was not obtained prior to the sentencing, although there was more than sufficient time.

c. Supporting cases, rules, or other authority:

In Roe v. Flores-Ortega, 120 S.Ct. 1029, 1036 (2000), the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." In Flores-Ortega, the Court held that the fact that a case went to trial was a factor weighing in favor of a finding that failure to consult was ineffective. Prejudice is not required to find inefecgive assistance under Flores-Ortega, supra. Consultation regarding appeal rights in criminal cases is mandatory under California law. See Pen.C. § 1240.1(a); and ¶ 8:41.2 ff.) Appellate counsel are obligated to obtain transcripts. People v. Scott (App. 2 Dist. 1998) 75 Cal.Rptr.2d 315, 64 Cal.App.4th 550, review denied, certiorari denied 120 S.Ct. 931.

7. **Ground 2 or Ground** 4 *(if applicable):*

My trial attorney was ineffective in failing to continue the trial where my medications I was taking for injuries from an accident caused me to have difficulty understanding the trial and would have made it impossible for me to testify. This failure to continue the case violated my due process rights under the Fifth and Sixth Amendment of the U.S. Constitution to be competent to stand trial.

a. Supporting facts:

Shortly before trial I was badly injured in a vehicle accident and was prescribed pain medications which reduced my ability to understand the trial and effected my ability to make coherent decisions about testifying. This level of medication made it impossible for me to be prepared to testify and the failure to obtain a continuance violated my right to testify in my own defense. In the hearing before trial I brought Attorney Taylor the hospital records which proved my injuries and the level of my medications. She did ask for a continuance, but she failed to notify the judge that the medications raised a substantial question regarding my competency to stand trial. Had she notified the judge of the effects of the medication on my coherence, the judge would have been required to hold a competency hearing. The continuance necessary for me to reduce my dosage of pain medication would have been moderate, but the failure to raise the competency issue was ineffective.

b. Supporting documents:

c. Supporting cases, rules, or other authority:

"The due process clause of the 14th Amendment U.S. Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent, so when substantial evidence raises a bona fide doubt about competency a trial judge must suspend trial proceedings and conduct a competency hearing. People v. Rogers (2006) 39 Cal.4th 826, 846-847.) Competency requires sufficient present ability to consult with one's lawyer with a reasonable degree of rational understanding. (People v. Halvorsen (2007) 42 Cal.4th 379, 401; Dusky v. United States (1960) 362 U.S. 402 (1960). Prescribed opiate use during trial has been held to be substantial evidence which raises a bona fide doubt of competency. Hansford v United States (1966) 124 App DC 387, 365 F2d 920, reh den (1966) 127 App DC 359, 384 F2d 311.

8. Did you appeal from the conviction, sentence, or commitment? ☐ Yes ☒ No If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Division of Superior Court"): ______

b. Result: ______ c. Date of decision: ______

d. Case number or citation of opinion, if known: ______

e. Issues raised: (1) ______

(2) ______

(3) ______

f. Were you represented by counsel on appeal? ☒ Yes ☐ No If yes, state the attorney's name and address, if known:
Vincent Maher was appointed as counsel for sentencing and he was obligated to file the appeal. He failed to file the appeal.
725 Texas Street, Fairfield CA 94533

9. Did you seek review in the California Supreme Court? ☐ Yes ☒ No If yes, give the following information:

a. Result: ______ b. Date of decision: ______

c. Case number or citation of opinion, if known: ______

d. Issues raised: (1) ______

(2) ______

(3) ______

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal (see *In re Dixon* (1953) 41 Cal.2d 756, 759):
My claims of ineffective assistance in investigating the case and serving witnesses are not sufficiently clear in the record to raise on appeal. My claims of ineffective assistance in preparing me for testimony are also based on evidence outside the record and must be addressed by habeas petition. People v. Cunningham, (2001) 25 Cal.4th 926, 1031.

11. Administrative review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Dexter* (1979) 25 Cal.3d 921, 925.) Explain what administrative review you sought or explain why you did not seek such review:

______

b. Did you seek the highest level of administrative review available? ☐ Yes ☐ No
*Attach documents that show you have exhausted your administrative remedies. (See* People v. Duvall *(1995) 9 Cal.4th 464, 474.)*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court, including this court? (See *In re Clark* (1993) 5 Cal.4th 750, 767–769 and *In re Miller* (1941) 17 Cal.2d 734, 735.)
☐ Yes If yes, continue with number 13. ☑ No If no, skip to number 15.

HC-001

13. a. (1) Name of court: ______

(2) Nature of proceeding (for example, "habeas corpus petition"): ______

(3) Issues raised: (a) ______

(b) ______

(4) Result (attach order or explain why unavailable): ______

(5) Date of decision: ______

b. (1) Name of court: ______

(2) Nature of proceeding: ______

(3) Issues raised: (a) ______

(b) ______

(4) Result *(attach order or explain why unavailable):* ______

(5) Date of decision: ______

c. *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Robbins* (1998) 18 Cal.4th 770, 780.)
I only learned in June 2021 that my attorney could have used her public defenders access to law enforcement databases to locate witnesses rapidly. My transcript was delayed for 6 months due to COVID and Solano Public Defender lost most of their file, and only located part of the file after a year. My Attorney Vincent Maher has failed to respond to multiple requests for my file.

16. Are you presently represented by counsel? [x] Yes [ ] No If yes, state the attorney's name and address, if known:
Douglas Beevers, Assistant Federal Public Defender, Office of the Federal Public Defenders for the Eastern District of California, 801 I Street, 3rd Floor, Sacramento CA 94815. Tel (916)498-5700.

17. Do you have any petition, appeal, or other matter pending in any court? [x] Yes [ ] No If yes, explain:
I am pending sentencing for a federal criminal case 2:20-CR-00029-WBS, which was based on conduct committed when I was on PRCS in case FCR316371.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
NA

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: 9-15-2021

▶ [signature]
(SIGNATURE OF PETITIONER)

0001

IN THE SUPERIOR COURT OF CALIFORNIA
COUNTY OF SOLANO
HONORABLE PETER B. FOOR, Presiding
-oOo-

PEOPLE OF THE STATE OF CALIFORNIA, )
)
)
Plaintiff, )
)
vs. ) No. FCR316371
)
HACK CULLING, JR., )
)
Defendant. )
)
)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

PRELIMINARY HEARING

MONDAY, JANUARY 25, 2016

-oOo-

A P P E A R A N C E S

-oOo-

For the Plaintiff: SARAI OBERMEYER
Deputy District Attorney
675 Texas Street
Suite 4500
Fairfield, CA 94533

For the Defendant: TAMANI TAYLOR
Deputy Public Defender
675 Texas Street
Suite 3500
Fairfield, CA 94533

LAURA FORSTER
Official Court Reporter
CSR License No. 8832

DEFENDANT'S EXHIBIT
A

0013

Q. So it wasn't until you say that you arrived at the house that at some point Mr. Culling got aggressive with you and wanted you to stay?
A. Yes.
Q. Okay. And you said you arrived around 2:00 o'clock?
A. Yes.
Q. Okay. And then you went to the police station later that day, correct?
A. Yes.
Q. And that was approximately almost 5:00 o'clock?
A. Yes.
Q. Okay. And you're basically at Mr. Culling's house from 2:00 to 3:00 o'clock; is that fair to say?
A. Probably longer.
Q. Okay. When you -- you spoke with this police officer here?
A. Yes.
Q. And that was in the lobby of the police department?
A. Oh, yes.
Q. Okay. Because you didn't call 9-1-1?
A. No.
Q. You had a cell phone?
A. I did.
Q. And was your cell phone with you when you were in the room with Mr. Castro -- or, Mr. Culling?
A. Yes, it was.
Q. Was anyone else home?
A. Not that I know of.

Q. Okay. Does Mr. Culling have a roommate at that time?
A. Yes.
Q. Had you met that roommate before?
A. Yes.
Q. And did you see that roommate that day when you arrived at 2:00 o'clock?
A. No, there was no car there.
Q. Okay. So you know what car the roommate drives?
A. Yes.
Q. And based on the fact you didn't see a car there, the roommate's car there, you assume the roommate was not at home?
A. Yes, and I had asked if anybody was there.
Q. And so did you and Mr. Culling immediately go up to the master bedroom when you arrived?
A. Yes.
Q. But was there a specific reason why you went to the master bedroom instead of speaking with him -- like I'm assuming there's a living room?
A. Yes.
Q. Okay.
A. We usually always hung out in his room because, you know, he didn't hang out in the living room because he didn't feel comfortable around those people.
Q. Okay. But you're saying there was nobody home at that time?
A. Yes.
Q. So there would be nobody not for him to uncomfortable around?

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SOLANO

--oOo--

PEOPLE OF THE STATE OF CALIFORNIA, )
)
Plaintiff, )
)
vs. ) No. FCR316371
)
)
HACK T. CULLING, JR., )
)
Defendant. )
)

CERTIFIED TRANSCRIPT

JURY TRIAL
Reporter's Transcript
of the above-entitled matter, held in
Department 8 of the Superior Court
Before the Honorable WENDY GETTY

---oOo---

SEPTEMBER 8, 2016

---oOo---

APPEARANCES

For the People: KRISHNA ABRAMS
SOLANO COUNTY DISTRICT ATTORNEY
675 Texas Street, Suite 4500
Fairfield, CA 94533
By: VERONICA JUAREZ,
Deputy District Attorney

For Defendant: LESLI CALDWELL
SOLANO COUNTY PUBLIC DEFENDER
675 Texas Street, Suite 3500
Fairfield, CA 94533
By: TAMANI TAYLOR,
Deputy Public Defender

Reported by: MARILYN K. LUNA, CSR 4189

DEFENDANT'S EXHIBIT B

**Q So how long did this argument between you and him take place?**
A I don't know.
**Q At some point did you start getting uncomfortable?**
A Yes.
**Q Why?**
A Because of our past.
**Q When you say past, are you talking about prior incidents of domestic violence?**
A Yes.
**Q Did you become concerned?**
A Yes.
**Q What was it about what the defendant was either doing or saying that made you concerned?**
A Just how his whole demeanor changed and how he seemed to be getting angry.
**Q So did he elevate his voice?**
A Yes.
**Q Physically, was there something about him that you can describe to us where you say that his demeanor changed?**
A It was just that he was just angry and then the way he was raising his voice. So I just wanted to leave.
**Q Did you tell him that you wanted to leave?**
A Yes.
**Q Did you take any steps to show him that you in fact wanted to leave?**
A Yes, I started to pack my daughter's bag and open the door to leave.

Q **Did he say anything to you at that point?**
A I think he told me that I wasn't going to leave. I think that's the only thing he kept saying to me.
Q **When you say that he grabbed you, can you describe how it is he grabbed your neck?**
A Like this.
THE COURT: She is putting -- extending both of her hands outward at shoulder level, her fingers are displayed and her hands are in a circular motion.
Q **BY MS. JUAREZ: Did he tighten his fingers around your neck?**
A Yes.
Q **Can you describe how tight he held you?**
A Well, he was -- it wasn't that hard but it was hard enough for him to grab me and have my whole neck and forcibly push me down so I fell onto the toilet.
Q **Do you recall whether you had any difficult breathing?**
A I don't recall.
Q **Do you recall if him grabbing you by the neck, was this a quick movement?**
A Yes.
Q **Do you recall how you reacted to that?**
A I fell and then I was just crying.
Q **Did you say anything to him?**
A I just kept asking him to please let us leave, you know, let me go.
Q **Where was your daughter at that point when he grabbed you by your neck?**

A She was in the room.

**Q Now, after you are pleading with him to let you leave after you had just fallen to the toilet, what happened?**

A We were still -- I was still struggling to get away from him in the room and I went to go to try and open the window.

**Q So when you say that you were still struggling to get out of the room, I am assuming at some point you exited the bathroom?**

A Yes.

**Q So after you exited the bathroom, where did you go?**

A Back into the room.

**Q And where was the defendant?**

A Right next to me.

**Q And why did you go back into the room?**

A Because my daughter was there still. And I couldn't leave.

**Q So after you went back into the room, what happened?**

A I was still trying to figure out a way to get somebody's attention or be able to leave.

**Q So what did you do?**

A I went to open the window.

**Q Where was this window located?**

A Here is the TV, here is the couch and there is the window.

**Q So the window is in the bedroom?**

A Yes.

THE COURT: She is pointing straight forward where the TV is, to the right was the couch and she is indicating the window was over the couch looking to the right.

THE WITNESS: Yes.
Q **BY MS. JUAREZ: At the time when you are trying to get out of the window where was your daughter?**
A Still in the room next to us, by us.
Q **Okay. Do you recall whether she was on the couch?**
A I think she was standing up because I tried to tell her to get out of the room.
Q **So what were you doing to try to get out of that window?**
A Well, I figured I probably couldn't get out of the window but I figured if I made noise loud enough maybe somebody would hear me and call the cops.
Q **Why didn't you think you could get out of the window?**
A Because I didn't want to leave the house without Kalaya, which is my daughter.
Q **Is this a big window or a small window?**
A It's pretty big. I could fit through it.
Q **And is it -- is it high or is it low enough where you could get out?**
A If I jumped to get out I could get out.
Q **So did you reach over for the window?**
A Yes.
Q **What happened when you reached toward the window?**
A He pulled me away from the window.
Q **By doing what?**
A Grabbing me -- he grabbed my arm so I couldn't open it.
Q **Did he say anything to you?**
A Only thing I can remember is the fact that he was telling me that I wasn't -- couldn't leave.

me sit there and not putting his hands on me or anything.

**Q When you were conversing, trying to calm him down, where were you in the room?**

A I know I ended up sitting down on the bed.

**Q Where was your daughter?**

A On the couch or standing by the door. I am not sure.

**Q What was your daughter's demeanor like?**

A She was scared.

**Q How could you tell?**

MS. TAYLOR: Objection, your Honor, speculation.

THE COURT: Sustained. Why don't you rephrase?

**Q BY MS. JUAREZ: What was your daughter's demeanor like?**

A She was scared.

MS. TAYLOR: Objection --

THE COURT: Do you understand -- why don't you rephrase demeanor?

**Q BY MS. JUAREZ: Physically how was your daughter reacting?**

A She was yelling.

**Q Do you recall -- when you say yelling, what do you mean, actual words?**

A Words.

**Q What was she saying?**

MS. TAYLOR: Objection, your Honor, hearsay.

THE COURT: I am not going to -- I am going to allow her to elicit this because I did direct that the demeanor question be reasked in a different manner but I am going to indicate it is a hearsay statement. It is not offered for the truth of the matter but for the effect of the conduct on this witness.

**Q BY MS. JUAREZ: What was your daughter yelling?**

A She said "Daddy, we are going to leave and we are never coming back."

**Q And what did you do when your daughter yelled that?**

A I was hurt. I just told her it's going to be okay.

**Q And at what point -- did your daughter yell at the defendant prior to you trying to calm him down?**

A Yes. That is what she kept saying.

**Q Now, you said that you believe somehow you ended up on the bed as you were trying to calm the defendant down. Was the defendant on the bed as well?**

A Yes, we both were sitting on the bed talking.

**Q How long were you talking for?**

A Thirty minutes, twenty minutes.

**Q And what happened during the course of that talking?**

A We laid there and we had sex.

**Q Why did you have sex with him?**

A Because I wanted him to think everything was okay so I could leave.

**Q And what happened after you had sex with him?**

A He was fine and he let me leave.

**Q Where was your daughter when the two of you were having sex?**

A She was laying down on the couch.

**Q Do you -- in the past in your relationship with the defendant would you normally have sex with your child in front of you?**

A No.

A Okay.
Q You and Mr. Culling had agreed upon a time for you to bring your daughter over to visit with him, correct?
A Yes.
Q And that was between 2:00 and 3:00 o'clock on July 30th?
A I am not sure of the exact time.
Q Do you recall telling Officer Spencer that you arrived between 2:00 and 3:00 o'clock?
A If that is the time I told him. I am not sure what time I told him.
Q Well, you testified at the preliminary hearing. Do you recall you testified it was between 2:00 and 3:00 o'clock?
A I don't remember.
Q Would it refresh your recollection to take a look at your preliminary hearing transcript?
A Sure.
THE COURT: Okay.
Q BY MS. TAYLOR: Actually, would it refresh your recollection to take a look at what you told Officer Spencer in your report?
A Okay.
MS. TAYLOR: May I approach the witness, your Honor?
THE COURT: Sure.
Q BY MS. TAYLOR: Does that refresh your recollection?
A Yes.
Q And do you recall telling the officer that you had arrived at Mr. Culling's house between 2:00 and 3:00 o'clock that day?
A Yes.

happened?
A About that, yes.
Q And then you had sex.
A Yes.
Q And you said that Mr. Culling when you arrived that day, he wanted you to bring your daughter over even though he was very sad that he had lost a friend?
A Yes.
Q And that friend committed suicide?
MS. JUAREZ: Objection, relevance.
THE COURT: Sustained.
Q BY MS. TAYLOR: And were you aware that this friend had passed away before you agreed to come to Mr. Culling's house?
A Yes.
Q And so you knew he was not in a good place emotionally when you agreed to come over to Mr. Culling's house?
A Yes.
Q And you agreed to bring your daughter over when he was not in a good place?
A Yes.
Q And you said that -- even though Mr. Culling was crying at some point?
A Yes.
Q And he was grieving the loss of his friend?
A Yes.
MS. JUAREZ: Objection, calls for speculation.
THE COURT: Want to rephrase?
Q BY MS. TAYLOR: Did he appear to be grieving the loss of

top?

A Yes.

Q And is that your cell phone number that appears at the top?

A Yes.

Q Okay. And is there a time that's listed at the top?

A Yes.

Q Okay. And is that time 10:48 a.m.?

A Yes.

Q So that text chain occurred between you and Mr. Culling on July 30th, 2015 at 10:48 a.m.?

A The beginning of the conversation.

Q Okay. But do you recognize that as a conversation?

A That is a conversation.

MS. TAYLOR: Thank you. May I publish, your Honor?

THE COURT: Any objection?

MS. JUAREZ: No objection.

THE COURT: Deputy Bennett, could you help us out again?

Q BY MS. TAYLOR: I am going show you what's been marked Defendant's Exhibit C. Can you see that? Can you see that, Ms. Castro?

A Yes, I can.

Q And the telephone -- cell phone number at the top 384-2609, that is your cell phone number?

A Yes.

Q And the date is July 30th, 2015?

A Yes.

Q And it is 10:48 a.m.?

A Yes.

Q And do you recall sending a text to Mr. Culling saying "Hey"?

A Yes.

Q And him saying "What?"

A Yes.

Q And you asking "Where are you?"

A Yes.

Q And then him saying "Home. Why?"

A Yes.

Q And you said "I thought your roommates were there," right?

A Yes.

Q He says "Just the girlfriend"?

A Yes.

Q And then you text "And where is your car?"

A Yes.

Q Were you in front of his house at that time?

A If I asked him where his car was I must have been in front of his house.

Q I am going to show you what's marked as Defense Exhibit D. That's your number that appears at the top, correct?

A Yes.

Q And it's kind of -- it looks like it starts a little later down the chain instead of the "A," which is from you, it started with the "What," right?

A Yes.

THE COURT: Meaning it is reflecting the same text

A Yes.
Q Mr. Culling told you that his roommate's girlfriend was home, correct?
A Yes.
Q Do you know her name?
A No.
Q Okay. You don't -- did you ever meet her?
A I think I have seen her once but I have never had a conversation with her.
Q Has Mr. Culling -- before when you guys -- you and Mr. Culling were still talking did he ever mention that her name was Nicole Beck?
A I don't remember that name.
MS. TAYLOR: Thank you. Nothing further.
THE COURT: Ms. Juarez.

REDIRECT EXAMINATION

Q BY MS. JUAREZ: You were asked if you and I have ever spoken about this case and you responded that you believed on two occasions, is that correct?
A Yes.
Q Have I ever told you what to say?
A No.
Q You know you have a responsibility to tell the truth here in court today?
A Yes.
Q Now, Ms. Taylor went over specifically what you did and didn't tell Officer Spencer when you spoke to him on July 30th of 2015, do you recall that?

**Q And she told some story about Mr. Culling straddling her on the bed, correct?**
A Yes.
**Q And her laying down on the bed, correct?**
A Yes.
**Q And him taking both hands and shaking her neck and head violently, correct?**
A Yes.
**Q That is the story she told you on July 30, 2015, right?**
A Yes.
MS. TAYLOR: Thank you. Nothing further.
THE COURT: Ms. Juarez, anything further?
MS. JUAREZ: No, your Honor.
THE COURT: Why don't you go ahead and step down. Thank you, Officer.
People want to call their next witness?
MS. JUAREZ: At this time, your Honor -- may we approach?
THE COURT: Sure.
(The following proceedings were held at benchside.)
MS. JUAREZ: I don't have any more witnesses.
MS. TAYLOR: I don't have anybody yet.
THE COURT: So exhibits can be admitted?
You are not going to ask to do an 1118, right?
Do you have any witnesses?
MS. TAYLOR: I have one potential witness but -- I was hoping that we wouldn't have -- we would have more time. So at this point, no, not here today.
THE COURT: Okay. Someone is not subpoenaed for today, I

take it.

MS. TAYLOR: We are in the process of trying to subpoena that person.

THE COURT: Got you. We are going to go ahead and rest subject to admitting all the People's exhibits.

And you had no objection to the defense exhibits?

MS. JUAREZ: That's correct.

THE COURT: The only thing I was thinking, I know we still have to go over jury instructions. I am going to recess them, I am going to printout a set and maybe just preliminarily go over it and just be on the same page. And then we can hit the ground running tomorrow.

MS. TAYLOR: Will the Court give me until tomorrow to see if I can get my witness?

It's supposed to be the roommate that was in the house. She was speaking with her.

Nicole Beck. That is the one that I have on my witness list. She was in the house.

THE COURT: The girlfriend.

MS. JUAREZ: The girlfriend of the guy that was living there.

MS. TAYLOR: The girlfriend of the guy that was living there, not his girlfriend.

THE COURT: When did you start making efforts to subpoena her?

MS. TAYLOR: August 31st I got her statement. She wouldn't give us her address.

THE COURT: What's her statement?

MS. TAYLOR: She stateed that she was home during the day, that she was leaving that evening so she was packing things up. And she said his bedroom was downstairs, her bedroom was upstairs, so she is going down around by his room to the kitchen, back up the stairs and in and out all day.

And she never heard any yelling or screaming or anything like that that would suggest someone was in duress.

THE COURT: Okay. No. I am going to direct that you have your next witness here and you don't have her under subpoena so we are going to rest and then we can all go over the instructions.

MS. TAYLOR: Thank you.

(The following proceedings were held in open court with the jury present.)

THE COURT: People have any additional witnesses or evidence subject to our discussion at the bench?

MS. JUAREZ: Simply, your Honor, to admit People's Exhibit No. 6 in evidence and at this time the People rest.

THE COURT: Okay. Does the defense care to call any witnesses or present any additional evidence?

MS. TAYLOR: Would the Court give us a brief recess?

THE COURT: Can you approach?

(The following proceedings were held at benchside.)

THE COURT: You need talk to your client about whether he is going to testify or not?

MS. TAYLOR: Yes. We had a previous conversation but now in light of the change.

THE COURT: If he testifies it would go past 4:00 and you

might sill have a chance to find your witness. And my pretrial rulings would not be violated.

MS. TAYLOR: I just want to talk to him about that.

(The following proceedings were held in open court with the jury present.)

THE COURT: Okay. We are going to take a five-minute comfort break for our jurors, being the kind and generous person that I am.

I think there is still some candy left too unless Bennett ate it all.

Special admonition. I am going to see you in seven minutes, at quarter till.

(Brief recess.)

THE COURT: Okay. We are back on the record outside the presence of the jury. And are you calling the next witness, Ms. Taylor?

MS. TAYLOR: No, the defense would rest at this time subject to the --

THE COURT: We have all the People's marked exhibits that were identified can be admitted. All the defense's marked exhibits. You have each had a chance to look at those lists?

MS. JUAREZ: Yes.

THE COURT: I am going to go bring back the jury, recess them, go over the instructions.

MS. TAYLOR: There is one defense exhibit that I didn't --

THE COURT: Okay. Let me go through that particular list then.

A, the vital statistics. You didn't go over that one.

SOLANO COUNTY OFFICE OF THE PUBLIC DEFENDER

PUBLIC DEFENDER
Lesli M. Caldwell

CHIEF DEPUTIES
Oscar Bobrow
Elena D'Agustino

CHIEF INVESTIGATOR
Les Durfee

675 Texas St., Suite 3500
Fairfield, CA 94533
707.784.6700 Main Office
707.784.6747 Fax

355 Tuolumne St., Suite 2200
Vallejo, CA 94590
707.553.5241 Phone
707.553.5013 Fax

INVESTIGATIONS DIVISION

REPORT OF INVESTIGATION

DEFENDANT: CULLING, HACK
INVESTIGATION #: 2016 - 279

ATTORNEY: TAYLOR, TAMANI
CASE #: FCR316371

INTERVIEW DATE: AUGUST 31, 2016
INVESTIGATOR: MURILLO, RICARDO

WITNESS: NICOLE BECK (DOB: 08/02/83)

SUBJECT: JULY 30, 2015 INCIDENT @ 2497 VALLEY OAK WAY, FAIRFIELD, CA

1. I identified myself as a Criminal Investigator with the Solano County Public Defender.
2. I informed the witness that our office is representing the above named defendant.

On August 31, 2016 I spoke with MS. NICOLE BECK, regarding HACK CULLING and an incident that occurred on July 30, 2015 at her residence located at 2497 Valley Oak Way in Fairfield, California. After identifying myself, NICOLE agreed to speak with me and stated the following:

NICOLE stated HACK was renting a room at the home owned by her boyfriend on Valley Oak Way. She said she lived on the second floor with her boyfriend in the master bedroom and HACK lived in a room on the first floor and used the bathroom downstairs. NICOLE stated there was another woman who rented a room second floor but she was not home on the date of the incident.

DEFENDANT'S EXHIBIT
C

NICOLE said, "I was there at the house that morning going up and down the stairs because I was leaving for the night. I was going up and down the stairs and never heard anything. I think I may have heard the TV on but that was it." She said she knew HACK was home because his car was parked out in front of the house or in the driveway.

NICOLE said if the incident that KEPALINA CASTRO is alleging, occurred in the morning, between 7:00AM and 12:00PM, she never heard anything at all during her numerous trips up and down the stairs that took her next to HACK'S bedroom. She said, "I was going up and down the stairs getting stuff to eat, taking things to my car and taking out the trash and just general stuff around the house and I would have heard if something was going on in his room."

NICOLE stated she left the house around 11:00PM give or take half an hour. She said she knew this because she wasn't there in the afternoon and had gone to get something to eat after she left a Rubio's and she still has a photograph of the Rubio's menu on her phone that was taken in the afternoon. She added. "All I know is that she would come over and they would be locked up in the room. I know he had a friend die around that time and HACK was very, very sad about it."

***END REPORT***

Ricardo Murillo

Digitally signed by Ricardo Murillo
DN: CN=Ricardo Murillo, O=Solano County Public Defender, OU=Investigations, E=RMurillo@SolanoCounty.com, C=US
Reason: I am the author of this document
Location: 674 Texas Street, Suite 3500 Fairfield, CA 94533
Date: 2016/09/01 14:03:55-08'00'

KRISHNA A. ABRAMS, Solano County District Attorney
BY: ANDREW HORVATH
675 Texas St, Ste 4500
~~Fairfield, CA 94533-6340~~
Telephone No. (707) 784-6800 Fax No. (707)784-7986
Attorney For: Petitioner, People of the State of California

FOR COURT USE ONLY

ENDORSED FILED
Clerk of the Superior Court

NOV 08 2019

By ______ DEPUTY CLERK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO
530-600 Union Avenue
Fairfield, CA 94533

IN THE MATTER OF: HACK T CULLING JR
Date of birth 11/16/1992 PRCS18-057

# PETITION FOR REVOCATION OF COMMUNITY SUPERVISION

CASE NUMBER:FCR337977
CDCR NUMBER: BF1625

INSTRUCTIONS

- Before filing this form, petitioner should consult local rules and court staff to schedule the hearing in item 1.
- Petitioner must provide notice of the date, time, and place for the hearing in item 1 to the supervised person, the supervised person's counsel, if any, and any victim. (Cal. Rules of Court, rule 4.540(e).)
- Petitioner must attach a written report that contains the declaration and information required under rule 4.541.
- Upon filing the petition, petitioner must provide copies of the petition and written report to the supervised person's counsel or, if unrepresented, the supervised person. (Cal. Rules of Court, rule 4.540(c)(4.)

1. HEARING INFORMATION: A hearing on this petition for revocation has been scheduled as follows:

   DATE: 11/08/2019 TIME: 1:30PM DEPT: TBD

   If an interpreter is needed, please specify the language:

2. CUSTODY STATUS: DEFENDANT IS IN CUSTODY.
   Booking number (if any):

3. CONVICTION INFORMATION:
   The supervised person was originally convicted of the following offenses: PC29800(A)(1); PC236
   on (specify date): 9/9/2016; 10/16/2017 in case numbers (specify): FCR323806; FCR316371
   in county of (specify): SOLANO and sentenced to (specify sentence): 2YRS 8MO; 1YR 4MO

4. SUPERVISION INFORMATION:
   The supervised person was released on community supervision on (specify date): 2/16/2018
   Name of current supervising agent or officer:
   Supervision is scheduled to expire on (specify date): 9/10/2021

5. SPECIFIC TERMS AND CONDITIONS: Petitioner alleges that the supervised person has violated the following terms and conditions of community supervision: FAILURE TO OBEY ALL LAWS

6. SUMMARY: Probable cause was established for the alleged violation on (specify date): 11/6/2019
   A copy of referenced report number VVPD19-08531 shall be provided to supervised person's counsel.

I declare under penalty of perjury and to the best of my information and belief that the foregoing is true and correct.

DATE: November 7, 2019 BY: [signature]
ANDREW HORVATH
Deputy District Attorney

## COURT'S PROBABLE CAUSE FINDING AND ORDERS

The court (select one)

☐ finds probable cause to support a revocation and preliminarily revokes supervision.

☐ does not find probable cause to support a revocation, vacates any hearing dates, and returns supervised person to parole supervision on the same terms and conditions. The supervising agency must notify the prosecutor, supervised person, and supervised person's counsel (if any) of the dismissal.

FOR COURT USE ONLY

DATE: 11/8/19 BY: BRYAN J. KIM
Judge of the Superior Court

DEFENDANT'S EXHIBIT D

# Appellate Courts Case Information

## Supreme Court

Change court

## Docket (Register of Actions)

**CULLING (HACK TOWNSEND) ON H.C.**
**Division SF**
**Case Number S273914**

| Date | Description | Notes |
|---|---|---|
| 04/05/2022 | Petition for writ of habeas corpus filed | Petitioner: Hack Townsend Culling<br>Attorney: Douglas John Beevers |
| 04/07/2022 | Received: | Proof of service on the Office of the District Attorney |
| 07/27/2022 | Petition for writ of habeas corpus denied | The petition for writ of habeas corpus is denied. (See People v. Villa (2009) 45 Cal.4th 1063, 1066 [habeas corpus relief is unavailable where the petitioner is not in the custody of California authorities as a result of the challenged conviction].) |

**Click here** to request automatic e-mail notifications about this case.



© 2022 Judicial Council of California

Petitioner,
HACK TOWNSEND CULLING
Sacramento County Jail
601 ~~500~~ I Street
Sacramento CA 95814

## IN THE UNITED STATE DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HACK TOWNSEND CULLING,<br>Plaintiff,<br>v.<br>CHRISTOPHER HANSEN, CHIEF PROBATION OFFICER OF SOLANO COUNTY,<br>Defendant. | Case No. __________<br>**CERTIFICATE OF SERVICE** |

I am a citizen of the United States, employed in the City of Sacramento, Sacramento County, California. My business address is The Office of the Federal Public Defender for the Eastern District of California, 801 I Street, 3rd Floor, Sacramento CA 95814. I am over the age of 18 and not a party to the within action. On September 22, 2021 I served a copy of the Petition for Writ of Habeas Corpus on the Office of the District Attorney for Solano County, 675 Texas St., Suite #4500, Fairfield, CA 94533.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed this 28 of July 2022.

Douglas J. Beevers

Dated: July 28, 2022